UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JASON JORDAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 9-610-P-S |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant | ) |

**RECOMMENDED DECISION**

Jason Jordan has filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. His motion is well written and supported by what he views as the relevant exhibits. He raises one ground in his motion, arguing that his trial attorney provided ineffective assistance of counsel when he failed to present an argument at sentencing regarding the amount of drugs attributable to Jordan. Because it plainly appears from the motion, the attached exhibits, and the record of the prior proceedings that Jordan is not entitled to relief on this basis, I recommend that the court dismiss the motion without requiring the United States to file an answer. <u>See</u> Rule Governing Section 2255 Proceedings 4(b).

**Factual Background**

Jason Jordan, along with others, was charged with conspiracy to possess with the intent to distribute 500 grams or more of cocaine, cocaine base, and marijuana and with four counts of using a communication facility in committing or facilitating a drug felony. He faced a potential penalty of at least five years, but not more than forty years imprisonment. Ultimately Jordan pled guilty to the drug conspiracy count and was sentenced to eighty months imprisonment and five years of supervised release.

Jordan appealed on the basis that the sentencing judge improperly denied him an offense level reduction for acceptance of responsibility based upon his commission of criminal acts while free on bail. Approximately three months after being released from custody, and while still on bail awaiting final disposition of this case, Jordan was charged with operating a motor vehicle while under the influence of alcohol and carrying a concealed weapon. This court revoked his bail and ten weeks later Jordan entered his guilty plea.

As the First Circuit explained:

> The district court directed the probation office to prepare a presentence investigation report (PSI Report). The PSI Report calculated Jordan's total offense level at 28 and assigned him to criminal history category I. This combination resulted in a guideline sentencing range of 78-97 months. In constructing that paradigm, the PSI Report declined to recommend an offense level reduction for acceptance of responsibility. See USSG §3E1.1. The Report stated:
>
> The defendant did . . . admit to the offense of conviction; however, the defendant also continued to engage in criminal behavior while on bond and was arrested for two new criminal offenses. Therefore, the defendant had not completely withdrawn from criminal conduct and the new conduct is related to the offense of conviction as it is substance abuse (alcohol) related. Jordan objected to this portion of the PSI Report, arguing that the June 15 incident was an aberration that should not be allowed to overshadow his "serious efforts to resurrect his life and to accept the consequences of his conduct."

United States v. Jordan, 549 F.3d 57, 58 (1st Cir. 2008).

The grist for the mill of Jordan's § 2255 motion occurred during the period between the entry of his guilty plea and the sentencing hearing. According to Jordan's allegations, which I accept as true for purposes of this screening, his attorney initially voiced objection to the amount of drugs attributed to him in the draft presentence report. (Sec. 2255 Mot. Ex. 1-1 ¶ 9.) Based on information the attorney received from his client he suggested to the preparer of the presentence report that the amount of drugs should be lowered, which would have resulted in a two-point reduction in the guideline offense. (Sec. 2255 Mot. at 3, Doc. No. 1.) According to

Jordan, the attorney maintained that objection through the presentence conference on January 23, 2008. The judge determined that the issues at sentencing would be (a) drug quantity, and (b) acceptance of responsibility, and accordingly scheduled a five-hour hearing following the presentence conference. On January 31, 2008, the court rescheduled the matter for a one-hour hearing. (See <u>United States v. Jordan</u>, 2:07-cr-006-GZS, Doc. Nos. 649 & 658.) The reason for the change was that the attorney withdrew the objection to drug quantity.

According to Jordan's version of events, the following unfolded:

> Subsequently, on 1-29-2008 counsel for the defendant drafted a letter to the defendant advising him that it was in his best interest to withdraw their objections regarding drug quantity and focus on acceptance of responsibility. (See Attachment)
>
> Under Protest the Defendant reluctantly consented to the proposed course of action, but only because counsel assured him of a "90%" chance of being granted a three point reduction for acceptance of responsibility if they abandoned the objections over drug quantity. Counsel 1-28-08 letter also cautioned the defendant of the risk of the AUSA attempting to attribute additional quantities of drugs to the defendant, thereby resulting in the possibility of an increase in the recommended guideline offense level. Conversely, in the same correspondence, defense counsel "recognized we have legitimate arguments that some of the telephone calls that Duff has analyzed do not involve amounts for which you should be responsible."

(Sec. 2255 Mot. at 3)

Counsel's January 28, 2008, letter to Jordan is attached to his motion and basically confirms what Jordan has said about its content, other than estimating a 90% probability of success on the acceptance of responsibility argument. The letter states that there is a risk that they might lose the acceptance of responsibility argument, but "that risk is far less than contesting the amount." (Sec. 2255 Mot. Ex. 1-2 at 2).

**Discussion**

The First Circuit summarized the standard for 28 U.S.C. § 2255 ineffective assistance claims in United States v. De La Cruz:

> The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). In order to prevail, a defendant must show both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). In other words, a defendant must demonstrate both seriously-deficient performance on the part of his counsel and prejudice resulting there from. In this case, Defendant has demonstrated neither.
>
> Although the Supreme Court in Strickland discussed the performance prong of an ineffectiveness claim before the prejudice prong, the Court made clear that "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.  As the Court noted: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id

514 F.3d 121, 140 (1st Cir. 2008); accord Alfano v. United States, 592 F.Supp.2d 149, 154 -55 (D. Me. 2008).    Jordan's ground for relief stems from his decision to plead guilty, and in United States v. Colon-Torres the First Circuit explained:

> In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court applied Strickland 's two-part test to ineffective assistance of counsel claims in the guilty plea context. Id. at 58 ("We hold, therefore, that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel."). As the Hill Court explained, "[i]n the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in [other cases]. The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. at 58-59.

382 F.3d 76, 85 -86 (1st Cir. 2004).

"When a petition is brought under section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing." <u>United States v. McGill</u>, 11 F.3d 223, 225 (1st Cir.1993)(citations omitted).  "A district court may forego such a hearing when 'the movant's allegations, even if true, do not entitle him to relief, or ... [when] the movant's allegations "need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible." <u>Owens v. United States</u>, 483 F.3d 48, 57 (1st Cir. 2007) (quoting <u>David v. United States</u>, 134 F.3d 470, 477 (1st Cir.1998)); <u>see</u> <u>also</u> <u>McGill</u>, 11 F.3d at 225 ("In determining whether the petitioner has carried the devoir of persuasion in this respect, the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations…") (citations omitted). Furthermore, when a "petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." <u>McGill</u>, 11 F.3d at 225.

In the present case Jordan's own submissions establish that his attorney's advice and counsel not only was well within an objective standard of reasonableness, but was in reality exemplary.  Even accepting Jordan's representation as accurate that counsel quantified the probability of success on the challenge to acceptance of responsibility at ninety-percent, the fact remains that the decision to forego the challenge to drug quantity was a clear strategic choice that Jordan agreed to after listening to his attorney's advice.   And on the record that Jordan has presented to the court I can only conclude that the advice was well chosen.  First, if Jordan had challenged drug quantity on this record, it is readily apparent that he would not have received the acceptance of responsibility credit. We know from hindsight that, even without the challenge to drug quantity, he did not receive the credit.  He would have gained nothing on that score if he had chosen to attack the drug quantity. Although Jordan now argues that counsel should have recognized the challenge to acceptance of

responsibility was doomed from the outset, the fact remains that his attorney mounted a nonfrivolous challenge based on the fact Jordan had pled guilty to the federal offense and had tried to combat his substance abuse addictions during the pretrial release period. The sentencing hearing transcript reflects that counsel also attempted, albeit unsuccessfully, to portray the state court operating under the influence and weapon charges as aberrations. Counsel urged the court to not allow one evening of bad judgment to abrogate all of the gains Jordan had made while on pretrial release. Essentially counsel did everything he could to garner credit for acceptance of responsibility and the transcript of the sentencing proceeding reflects that fact.

We also know from the information submitted by Jordan that his attorney alerted him to the fact that if they mounted a full-blown challenge to the drug quantity amount recommended by the PSI report, the United States was prepared to maintain its own previously filed objection and argue for a greater amount than what had been recommended. Thus Jordan faced the risk of a greater guideline sentencing range than what had been proposed in the presentence report. Confronted with these circumstances, Jordan's counsel did what competent counsel must do. He alerted his client to the considerable risks associated with pursuing an evidentiary hearing on the issue of drug quantity, advised his client as to his recommendations, and made it clear that the defendant had to make the final decision. This is facially a strategic choice that falls within the range of Sixth Amendment reasonableness. See Strickland, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'") (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Furthermore, when one looks at the Strickland prejudice prong, Jordan offers precious little to suggest that his attorney's recommendation caused him any real prejudice. According to Jordan, his hopes of reducing the drug quantity primarily depended upon his own testimony and successful cross-examination of Kyle Gabris and Efstatios Mihalakis, two co-conspirators, both of whom

testified on behalf of the United States and received substantial assistance departures. (Sec. 2255 Mot. at 6.) Apparently Jordan thinks that putting a slightly different "spin" on the recorded conversations would get the drug quantity reduced. Experienced counsel perceived the matter differently and alerted Jordan to the inherent risk of proceeding with such a hearing especially when the United States was prepared to argue for a greater drug quantity than recommended in the presentence report. Absent some highly favorable exculpatory evidence which Jordan has not identified in his written motion, I fail to see how counsel's objectively reasonable advice that he forego a challenge to the drug quantity caused Jordan to suffer any prejudice in the sentencing process.

## Conclusion

For the reasons above I recommend that the Court deny Jordan 28 U.S.C. § 2255 relief. I further recommend that a certificate of appealability should not issue in the event Jordan files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

December 15, 2009           /s/ Margaret J. Kravchuk
                            U.S. Magistrate Judge